UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED SATES OF AMERICA ) | |
| ) | No. 03 CR 0251 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| PIOTR MISIOLEK. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

On May 5, 2004, pursuant to written plea agreement, Defendant, Piotr Misiolek, pled guilty to one count of conspiracy to distribute 3,4 methylenedioxymethamphetamine, in violation of 21 U.S.C § 846; one count of conspiracy to engage in money laundering to promote the controlled substance business, in violation of 18 U.S.C. § 1956(h); and one count of conspiracy to traffic in stolen vehicles, in violation of 18 U.S.C. § 371. Presently before the Court is Defendant's Motion to Withdraw Plea of Guilty.

## BACKGROUND

### Change of Plea Hearing

At the beginning of the May 5, 2004 plea hearing, the Court asked the Defendant numerous questions to ascertain whether Defendant was competent to change his plea and enter a plea of guilty. The Court informed Defendant that if he wished to speak with his attorney at any time, he could simply tell the Court he wanted to speak with his attorney, and the proceedings would be stopped so he and his attorney could speak in private. Defendant answered that he understood. Defendant's counsel and the United States District Attorney also stated that they believed that Defendant was competent to change his plea.

The Court continued questioning Defendant, in pertinent part, as follows:

| | |
|---|---|
| The Court: | And if you plead guilty and if you're found guilty based on your plea or your admission of guilt, there will not be a trial in this proceeding and all that will remain to be done will be to proceed to the sentencing phase of these proceedings, that is to enter a sentence based on your plea of guilty. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | That will occur after I hear from your lawyer as to whatever recommendations you believe is appropriate in sentencing, after I hear from the government regarding their recommendations as to the appropriate sentence, after I consider a presentence investigation report that's prepared by the probation department regarding you and your background and matters that are relevant and germane to the appropriate sentence, then finally after I hear from you in the courtroom here if you choose to make a statement. But that's all that will remain to be done if you plead guilty. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | Counsel, can I ask you to outline the statutory maximum penalty for . . . |
| Mr. Anderson: | There are three counts to which the defendant is entering a plea of guilty. The first count of the indictment carries a maximum penalty of 20 years' imprisonment, a maximum fine of one million dollars, and a term of supervised release of at least three years. Count 2 of the indictment carries a maximum penalty of 20 years' imprisonment, a maximum fine of the greater of $500,000 or twice the amount of funds laundered, and a term of supervised release of up to three years. Count 3 carries a maximum penalty of five years' imprisonment, a maximum fine of $250,000 of twice the gross gain or loss caused by the offense, whichever is greater, |

|  |  |
|---|---|
|  | and any restitution ordered by the court. |
|  | * * * |
|  | So I believe the total of that, Your Honor, would be a term of imprisonment on the total of the three counts would be 45 years' imprisonment, a fine of the greater of 1.75 million dollars or 1 million dollars plus twice the amount of funds laundered in connection with Count 2 added to twice the gross gain or loss caused by the offense in Count 3, plus the terms of supervised release. |
|  | * * * |
| The Court: | Do you understand that as to Count 1 you could be sentenced up to a period of 20 years in the custody of the Bureau of Prisons, you could be fined in the sum of one million dollars, and upon your release from the Bureau of Prisons you would be placed – could be placed on a period of supervision up to three years, and you would be required to pay a special assessment of one hundred dollars? |
|  | As to Count 2, you could be sentenced to custody in the Bureau of Prisons up to 20 years, you could be fined in the amount of $500,000 or two times the amount of funds laundered, whichever is greater, you could be placed on a period of supervision after release from prison up to three years, and you would be required to pay a special assessment of one hundred dollars. |
|  | As to Count 3, you would be placed in a – placed in the Bureau of Prisons for a period of confinement up to five years, you could be fined in the sum of $250,000 or two times the gross gain or loss from the criminal enterprise, whichever is greater, you would be placed on a period of supervision for three years after your release from custody, and you would be required to pay a one hundred dollar assessment. |
|  | Do you understand that's the possible punishment under the statute? |

| | |
|---|---|
| The Defendant: | Yes. |
| The Court: | Do you understand also that I am not bound by the terms and conditions in the plea agreement, that I can sentence you to the maximum amount permitted under the statute and the sentencing guidelines even though your recommendations may disagree with that, and even though you disagree with the sentence or the amount of the sentence you're still bound by the sentence and could not withdraw your plea of guilty? Do you understand that? |
| The Defendant: | Yes. |

\* \* \*

| | |
|---|---|
| The Court: | Mr. Misiolek, I have a ten-page document entitled Plea Agreement. On the last page there's a line. Under the line is typed the words Piotr Misiolek. Above it is a signature. Is that your signature? |
| The Defendant: | Yes. |
| The Court: | Did you sign this? |
| The Defendant: | Yes. |
| The Court: | Did you read this before you signed it? |
| The Defendant: | Yes. |
| The Court: | Did you discuss this with [your defense counsel] before you signed it? |
| The Defendant: | Yes. |
| The Court: | Did [your defense counsel] answer all your questions regarding the terms and conditions of this plea agreement? |
| The Defendant: | Yes. |
| The Court: | Did he answer those questions before you signed this? |
| The Defendant: | Yes. |
| The Court: | Is there anything about this agreement, Mr. Misiolek, you do not understand? |
| The Defendant: | No. |
| The Court: | [Defense Counsel], from your discussions with your client, do you believe he understands the terms and conditions of the plea agreement? |
| Defense Counsel: | Yes, I do, Your Honor. |

| | |
|---|---|
| The Court: | Mr. Misiolek, has anyone forced you in any way to cause you to plead guilty? |
| The Defendant: | No. |
| The Court: | Has anyone threatened you to cause you to plead guilty? |
| The Defendant: | No. |
| The Court: | Apart from this plea agreement, have there been any promises made to you as to what the sentence will be or any other promises that have caused you to plead guilty? |
| The Defendant: | No. |
| The Court: | Is the decision to plead guilty entirely voluntary on your part after discussing this matter with [Defense Counsel], your lawyer? |
| The Defendant: | Yes. |
| The Court: | Have any promises been made to you by [Defense Counsel] or anyone else in that regard as to what the sentence will be other than what we've discussed here? |
| The Defendant: | No. |
| The Court: | You realize, Mr. Misiolek, it must be your decision and your decision alone to plead guilty regardless of any advice you have been given. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | And you understand that it will be my final decision what the punishment will be, what the sentence will be under the statute and guidelines, and you'll be bound by that decision. Do you understand that? |
| The Defendant: | Yes. |

Following a review of the factual bases of Counts 1, 2 and 3, Defendant stated that he did not disagree with the summary and, in fact, was guilty of Counts 1, 2 and 3. Sentencing of Defendant was scheduled for August 4, 2004.

*Sentencing Hearing*

On August 24, 2004, the Court reviewed the Defendant's guideline calculations. The Defendant did not object to the possible sentences that were again discussed (the same as discussed during the plea hearing) and did not raise any issue that he believed his sentence would be otherwise. Issues arose regarding the forfeiture of certain property and whether consecutive or concurrent sentences applied; and the sentencing hearing was continued to September 7, 2004, so these issues could be addressed.

Prior to September 7, 2004, Defendant fled the United States. In August 2006, Defendant was captured in the Czech Republic and returned to the United States. In May 2007, Defendant, with new counsel, moved to vacate his guilty plea, arguing that his previous attorney told him that if he did not plead guilty, he would most likely receive a sentence of life imprisonment and promised him that if he did plead guilty, he would be sentenced between seven and ten years' incarceration.

*Motion Hearing*

On January 23, 2008, a hearing was held on Defendant's motion to withdraw his guilty plea.

Defendant testified as follows: "At the beginning" when he spoke with his attorney, his attorney told him that it was possible he would receive a sentence of seven to ten years' incarceration. Defendant's counsel also informed Defendant that he should plead guilty after Defendant informed his counsel that he did not have additional funds for trial. Defendant met with his counsel to discuss the plea agreement, at his counsel's office, at which time Defendant indicated that he did not agree with the original drug quantity. Defense counsel told Defendant that "it didn't make any difference at this point." Defense counsel told Defendant that the maximum penalty would be a life sentence and that he would receive this sentence if he went trial. However, defense counsel

6

told him that if he signed the plea agreement, he would receive a seven-to-ten year sentence. Prior to August 4, 2004, Defendant did not know he would be sentenced to twenty years' incarceration. Based on his discussions with his attorney, Defendant believed that if he signed the plea agreement, he would be sentenced from seven to ten years' incarceration. Defendant answered the Court's questions regarding his signing the plea agreement because that was "how the process" worked as it was explained by his attorney. Defendant did not have any other experience with the judicial system. If Defendant knew he was not going to receive a sentence of between seven and ten years' incarceration, he would not have signed the plea agreement. Defendant fled the country after the August 4 hearing because he then realized that he would receive a sentence of at least twenty years' incarceration, and his attorney told him there was nothing that could be done at that time.

On cross-examination, Defendant admitted that in December 2003, he went to the Polish consulate in Chicago, Illinois, and received a new passport in violation of the conditions of his bond, which included home confinement and surrender of his passport. In applying for the new passport, Defendant lied, stating that he lost his passport. Defendant testified that he needed the passport to sell his home. Defendant also conceded that he lied in an affidavit regarding money that was seized from him in an attempt to get the money back. Defendant also possessed a false driver's license and credit cards in the name of Piotr Uciolek.

Defendant's previous counsel also testified at the hearing as follows: He has been a member of the bar since November 1972. In 1985, he began working as a sole practitioner, first as a general practitioner and then limiting his practice to criminal defense work. He speaks Polish fluently and spoke Polish with Defendant approximately one percent of the time, speaking in English ninety-nine percent of the time. In May 2003, he and Defendant engaged in proffer conferences with the

7

Government. The Government did not find the proffer conferences useful because the information received was insignificant, was already known, or was deemed fictitious. After prior defense counsel received notice that multiple co-defendants were pleading guilty, he informed Defendant of the pleas and that these co-defendants were likely agreeing to testify against Defendant. Thus, Defendant's odds of prevailing at trial were significantly reduced. Prior defense counsel suggested that Defendant give consideration to some type of plea arrangement with the Government. He also informed Defendant that, based on what he knew of the case, the Defendant did not have much leeway with the guidelines and suggested that Defendant provide the Government information so that the Government may change their posture. He spoke with Defendant on several occasions about the sentencing guidelines, including telling him about various factors in aggravation and mitigation.

Defense Counsel provided Defendant a copy of the plea agreement shortly after it was received and reviewed the plea agreement with Defendant. After reviewing the plea agreement, prior defense counsel "had no question in [his] mind" that Defendant understood the terms of the plea agreement. He could "say with absolute certainty" that the numbers "seven and ten were never part of any conversation" he had with Defendant and his possible sentence. He never told Defendant that he negotiated a "side deal" with the Government. He reviewed the sentencing guidelines with Defendant before the plea and reviewed the presentence investigation report with Defendant prior to August 2004. He did not speak with Defendant about a "blind plea in those terms."

## ANALYSIS

A defendant does not have an absolute right to withdraw his guilty plea. *See United States v. Pike*, 211 F.3d 385, 388 (7th Cir. 2000) (*Pike*). Prior to sentencing, the court may permit a defendant to withdraw his plea if he presents a "fair and just" reason for doing so. *See* Fed. R. Crim. P. 32(e). A plea that is not voluntary may constitute a fair and just reason for withdrawing a guilty plea. *See United States v. Ellison*, 835 F.2d 687, 692-93 (7th Cir. 1987). The burden of justifying such rests with the defendant. *Pike*, 211 F.3d at 288.

Factors considered in determining whether a defendant has demonstrated a fair and just reason to withdraw a guilty plea include: (1) the timeliness of the defendant's attempted plea withdrawal, (2) whether the defendant has asserted or maintained his innocence, and (3) the voluntariness of the plea. *See United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998); *United States v. Vlamakis*, 872 F. Supp. 533, 538 (N.D. Ill. 1995) (*Vlamakis*); Fed. R. Crim. P. 32(d) Advisory Notes (1983 Amendment).

The timeliness of Defendant's attempt to withdraw his plea weighs against Defendant. Defendant pled guilty on May 4, 2004, but did not move to withdraw his guilty plea until May 11, 2007, and only after he violated the terms of his bond and absconded from the United States. In addition, Defendant does not assert that he is actually innocent.

With the first two factors weighing heavily against Defendant, Defendant argues that his guilty plea should be vacated because it was not entered knowingly because he was denied fundamental information that was necessary to make an informed decision about whether to plead guilty and because the plea agreement and plea colloquy did not include language of the actual sentencing ranges.

9

The reason a court engages in a Rule 11 colloquy is to establish that a plea is knowingly and voluntarily made. *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998) (*Standiford*). The record that is created at a Rule 11 hearing is accorded a "presumption of verity". *United States v. Truss*, 961 F.2d 685, 689 (7th Cir. 1992). A district court judge must be able to rely on the defendant's sworn testimony at the Rule 11 proceeding. *See United States v. Gwiazdzinski*, 141 F.3d 784, 788 (7th Cir. 1998). Accordingly, "a defendant who files a motion to withdraw his plea on grounds that his plea was not knowing and voluntary, contrary to his assertions at the Rule 11 proceeding, faces a heavy burden of persuasion." *Standiford*, 148 F.3d at 868-69.

During the plea, the Court engaged in an extensive Rule 11 colloquy to make certain that Defendant's guilty plea was knowing, intelligent, and voluntary. Defendant answered all of the questions posed by the Court in a manner that indicated he clearly understood each question and the significance of his answer. Defendant affirmed that he understood the charges against him; that he was not forced to plead guilty by anyone and that he was not threatened by anyone to plead guilty; that other than the terms and the conditions of the plea agreement, no other promises were made to induce him to plead guilty; and that he understood the decision to plead guilty was his alone.

As to the possible sentencing, the Government clearly stated the possible sentences as to each count in the presence of the Defendant. The Court repeated those possible sentences and specifically asked Defendant if he understood those possible sentences, to which the Defendant answered "Yes." The Court further informed Defendant that he could not withdraw his plea if he later disagreed with the sentence imposed by the Court, to which the Defendant stated he understood. Thus, Defendant was informed of the possible sentences twice during the plea colloquy. The possible sentences discussed during the plea colloquy did not include any reference of a possible

sentence of seven to ten years' imprisonment; and Defendant did not, even though given the opportunity to do so, indicate that the sentences discussed were contrary to what he was informed by his attorney. Furthermore, the Court specifically asked the Defendant if there were any promises made to him as to what the sentences would be that caused Defendant to plead guilty, to which Defendant stated "No." The Court went even further, specifically asking Defendant whether his attorney made any promises to him regarding his sentences, to which Defendant answered "No."

The substance of the plea colloquy is directly contrary to Defendant's testimony at the evidentiary hearing on Defendant's motion to withdraw his guilty plea, at which time Defendant testified his attorney told him that if he pled guilty, he would receive a seven-to-ten year sentence and that if he went to trial, he could receive a life sentence.

Moreover, Defendant's testimony during the hearing on the motion to withdraw the guilty plea was not credible nor persuasive. Rather, his willingness to be untruthful when it was to his benefit was readily apparent.[1] Further, Defendant's previous counsel adamantly denied telling Defendant he would likely receive a sentence of seven to ten years' incarceration. Contrary to Defendant's testimony, his previous counsel's testimony was credible and persuasive.

Defendant further argues that his plea was not knowingly made because his previous counsel did not discuss the possibility of entering a blind plea and contesting certain issues, such as drug quantity. However, Defendant's previous counsel did not testify that he did not discuss a blind plea; instead, he testified that a blind plea was not discussed "in those terms." In other words, the phrase "blind plea" was not used.

---

[1]Defendant's present counsel, Beau B. Brindley, admits, "There is no question about the fact that Mr. Misiolek has credibility problems." (Arguments on Motion to Withdraw Plea of Guilty, p. 19).

11

Defendant has not demonstrated that the issue of contesting the drug quantity was not discussed or analyzed in determining whether to plead guilty. To the contrary, Defendant's previous counsel testified that possibly pleading guilty was discussed because of the number of co-defendants that were pleading guilty that would likely be testifying against Defendant as to his leadership role and drug quantity.

Ironically, Defendant attempts to use the fact that he violated bond and fled the United States as evidence that he did not knowingly plead guilty. Defendant asserts that his departure from the United States after the August 24 sentencing hearing demonstrates he was misled by his prior attorney that he was going to be sentenced to seven to ten years' incarceration. He argues that he fled when he learned for the first time at this hearing of possible sentences of up to twenty years' incarceration as to Counts 1 and 2, which were discussed at the August 24 hearing. However, these same possible sentences were discussed at length during the plea colloquy on May 25; and Defendant affirmed at that time that he understood the possible sentences (as discussed above). Furthermore, the Defendant's assertion in this regard is contradicted by Government's Exhibit 7, which demonstrates that at least a week prior to August 24, 2004, Misiolek intended to flee the United States. Exhibit 7 is a Polish customs declaration form used by Polish residents in the United States to notify the Polish government of their intent to "finalize their stay in the USA in order to resettle in Poland." On or about August 17, 2004, Misiolek and his father completed this form, notifying the Polish authorities that they had been in the United States since approximately

November 4, 1990, and that they intended to leave the United States and return to Poland by September 30, 2004. Defendant signed the document, which included the following language directly below his signature:

> I give this affidavit with full understanding of article 233 & 1 of Criminal Code.
>
> "Whoever gives a testimony that is being used as an exhibit in a court case or other case that is pursuant to the legal proceedings code, which is untrue or not disclosing the truth, is liable to imprisonment for up to 3 years."

Based on the above, Defendant has failed to demonstrate that his plea of guilty was not knowing, intelligent, and voluntary.

Lastly, Defendant argues that a fair and just reason exists to vacate Defendant's guilty plea because Defendant lacked the requisite knowledge to plead guilty and because of the plea agreement's purportedly disadvantageous terms. Defendant's alleged lack of knowledge is fully addressed above. Moreover, Defendant's argument that the plea agreement was of no benefit to the Defendant ignores his poor bargaining position in negotiating a plea agreement in light of the weight of the evidence against the Defendant and the fact that several co-defendants intended to plead guilty and were likely going to testify against Defendant if he elected to proceed to trial. Furthermore, the plea agreement did not foreclose Defendant from arguing certain possible sentence reductions, for example, concurrent versus consecutive sentences, a reduction for cooperation with the Government, and a reduction for acceptance of responsibility.[2]

---

[2] Contrary to Defendant's argument, the plea agreement left open the possibility of arguing a sentence reduction for acceptance of responsibility; and Defendant's own conduct of violating his bond and fleeing the country greatly reduced the strength of Defendant's argument that he deserves such a reduction.

## CONCLUSION

For the reasons stated above, Piotr Misiolek, has failed to present a fair and just reason to withdraw his plea of guilty. Accordingly, Defendant's Motion to Withdraw Plea of Guilty is denied.

Dated: March 27, 2008

JOHN W. DARRAH
United States District Court Judge